EDWARD A. MIGLIACCIO *vs.* A. & S. ANGOLANO, INC.

MARCH 14, 1958.

PRESENT: Condon, C. J., Roberts, Andrews and Paolino, JJ.

PAOLINO, J. This is an action of assumpsit to recover commissions alleged to be due under an oral contract for services performed by the plaintiff for the defendant in the sale of jewelry. After a trial in the superior court before a justice thereof sitting without a jury a decision was rendered in favor of the plaintiff for $510. The case is before us on the plaintiff's bill of exceptions to such decision and to certain evidentiary rulings by the trial justice.

The declaration consists of the common counts and a special count setting out an express oral agreement between the parties whereby plaintiff was hired as an independent salesman to sell defendant's jewelry in return for a promise on the part of defendant to pay to plaintiff a commission of 10 per cent on all merchandise so sold.

The plaintiff further alleges in the special count that he was hired for the "season"; that in accordance with such agreement he obtained a number of customers and made certain sales; that defendant refused to pay him all commissions already due on orders procured by him and all commissions due on repeat orders during the season for which he was hired; that it prevented him from completing the agreement; that it wrongfully discharged him; and

that he has lost profits to which he would have been entitled had he been permitted to complete the terms of the agreement.

The plaintiff's evidence is in substance that he started to work as an independent salesman for defendant in May or June 1949 under an oral agreement of hire; that such agreement provided for the payment to him of a commission of 10 per cent on all sales made by him on the eastern seaboard, which consisted of all the New England states and all the states on the eastern coast from New York through the state of Florida; that he was to receive a commission of 5 per cent on the first order on all sales made by him outside the area of the eastern seaboard; that the agreement provided that he was to have defendant's line of merchandise for the season, which extended to December 31, 1950; and that under such agreement he was entitled to the commission of 10 per cent on repeat orders up to December 31, 1950 on all sales made by him to customers who belonged in the eastern seaboard area.

The plaintiff testified that defendant took its line away from him in June 1950; that three weeks later he was told he was discharged; that there was no agreement that he was not to carry conflicting lines of jewelry for other manufacturers; and that in fact as a matter of ethics he was not doing so. Under cross-examination plaintiff expressly denied that defendant had told him he would be hired only if he carried but two lines, one of which was to be nonconflicting. He also testified that the total sales would show that in 1949 and 1950 he did exceptionally well in the sale of defendant's jewelry products.

The defendant's evidence was in direct conflict with that of plaintiff. Arthur Angolano and Salvatore J. Angolano, officers of the defendant corporation, testified in substance that the corporation was engaged in the manufacture of rhinestone jewelry; that plaintiff was hired in April 1949 as a salesman under an oral agreement which provided that

he was to sell defendant's rhinestone jewelry in an area covering the states generally from Maine to Maryland; that he was to receive a 10 per cent commission on all sales made by him in that territory and 5 per cent for sales to certain accounts known as house accounts; and that plaintiff could not carry any conflicting line. The said witnesses also testified that at a later date it was agreed that plaintiff was to receive no commission for the sale of expansion bracelets, which defendant began to manufacture in February 1950. They further testified that in June 1950 they discharged plaintiff on the ground that he was carrying a competing line of jewelry which he was selling below defendant's price.

An accountant, who was called by plaintiff as a witness, testified that he had examined defendant's records, and a financial statement prepared by him was introduced in evidence as plaintiff's exhibit 4. This statement purports to show that the total of commissions due plaintiff was $16,-734.38 less the sum of $7,017.73 which he admitted he had received. The plaintiff testified that the balance due him was $9,716.65 according to his accountant's report. However, it is pertinent to note that such accountant stated in his report that it was based on a commission agreement which the plaintiff held applied, that is, 10 per cent on sales in territory located on the east coast and 5 per cent on sales in territory away from the east coast.

It appears from the evidence that during the period of employment defendant prepared and delivered to plaintiff certain commission statements and five checks in payment of commissions. The original commission statements for the period from May to December 31, 1949, which plaintiff had received from defendant, were admitted in evidence as defendant's exhibit A and the five checks were admitted as its exhibit B. The plaintiff's exhibit 1 consists of the commission statements covering the period from January 1 to April 30, 1950. The plaintiff stated that he had never

received any such commission statements for the months of May and June 1950.

At the conclusion of the hearing the trial justice, after carefully reviewing the evidence, rendered a decision in which he found that plaintiff had failed to prove by a fair preponderance of the evidence the contract on which he based the instant action or the loss of any future profits. However, he found that, since defendant conceded that the sum of $369.29 was due plaintiff and since plaintiff had shown that he was entitled to an additional commission of $4.48, which was not contradicted by defendant, the plaintiff was entitled to the sum of $373.77 plus interest. He thereupon rendered a decision for plaintiff for $510.

The plaintiff contends that the decision of the trial justice is clearly wrong on the ground that it is not supported by a fair preponderance of the evidence and because it is not in accordance with law. During the course of the trial plaintiff took exceptions to certain evidentiary rulings which are the basis of his exceptions 1 through 7.

Arthur Angolano, an officer of the defendant corporation, having testified in direct examination without objection that defendant had other salesmen working for it, was asked by its counsel to tell the territory covered by the other salesmen. Exception 1 is based on plaintiff's exception to the allowance by the trial justice of such question and answer over plaintiff's objection. It may well be that this testimony was irrelevant, but even assuming that such was the case, we are convinced it was not prejudicial and therefore the exception is overruled.

Exception 2 relates to a ruling of the trial justice permitting the same witness, Arthur Angolano, to testify as to what certain commission statements showed. These statements were carbon copies of original accountings which had been prepared by defendant in the ordinary course of business and delivered to plaintiff and the originals of which were in the possession of plaintiff. We do not deem it nec-

essary to consider this exception in view of the fact that the trial justice clarified such ruling and sustained plaintiff's objection to the reading of the copies by the witness on the ground that the carbon copies were themselves the best evidence. This exception is overruled.

Arthur Angolano also testified in direct examination that these carbon copies were commission statements which defendant prepared in the ordinary course of its business. The plaintiff objected and moved that the witness' answer be stricken. Exception 3 is based on the trial justice's denial of plaintiff's motion. We find no error therein and this exception is overruled.

Exception 4 is based on a ruling of the trial justice admitting in evidence as defendant's exhibit A certain original commission statements which were in the possession of plaintiff, having been prepared by defendant in the regular course of business and which had either been delivered to plaintiff or picked up by him at defendant's place of business. These original accountings covered the period from May to December 31, 1949 and showed the commissions due plaintiff for that period. The trial justice ruled that they were admissible in evidence since they had been prepared by defendant and delivered to plaintiff before the instant controversy arose. In our opinion the trial justice did not err in so ruling. These commission statements clearly are evidence of a course of dealing between the parties and, moreover, they contained information which was material to some of the main issues in the case, namely, the area in which the sales were made and the amount of commissions due plaintiff. This exception is overruled.

In answer to a question in direct examination Arthur Angolano replied that the record relating to expansion bracelets on plaintiff's exhibit 1 was kept in a separate column. The witness was then asked why they were kept separately and he replied: "Because no commission is paid on it, and they may have been on the same invoice as the other in-

voice that there were commissions to be paid on." The plaintiff objected and moved that the last part of such answer be stricken from the record. Exception 5 relating to such ruling is lacking in merit. The trial justice correctly permitted the witness to explain the meaning of the notation on the exhibit in question.

In cross-examination Arthur Angolano was questioned by plaintiff's counsel concerning a man named Sam Fertman. His answer was that Fertman handled expansion bracelets and rhinestone jewelry for defendant. He was then asked: "And did he handle rhinestone business for other firms while he was handling yours?" The defendant's objection was sustained by the trial justice. However, by a subsequent ruling the witness was allowed to answer the question over defendant's objection and therefore we do not deem it necessary to further consider exception 6. This exception is therefore overruled.

The depositions of Alfred Silvestro were read into the record. It appears that they were taken in Florida on behalf of defendant and that at the time plaintiff was neither present nor represented by counsel. The plaintiff's counsel objected to one of the questions in the depositions on the ground that it was a leading question. Exception 7 is based on the ruling of the trial justice that such objection was not timely since it was not made at the time the question was asked when the depositions were taken. The trial justice stated: "A man who takes a deposition has a right to have the objections made at the time and the reasons for them explained so that he can change it if he wishes, otherwise he has no chance to correct himself." We find no error in such ruling. This exception is overruled.

The plaintiff's remaining exceptions relate to the decision of the trial justice awarding $510 to plaintiff. He contends that the decision is not in accordance with the law, the evidence and the weight thereof. It is well settled in this state that findings of fact on conflicting evidence by a trial

justice sitting without a jury are entitled to great weight and will not be disturbed unless they are clearly wrong. *Mitsmenn* v. *Mitsmenn*, 82 R. I. 23, 27.

The trial justice carefully analyzed the evidence. He observed that almost every one of the witnesses was biased and that there had been reasonably serious impeachments of the principal witnesses on both sides; that there was a direct conflict of testimony on all the main issues; and that there was no compelling "ringing message of truth" on either side. However, on the basis of the evidence before him he found that plaintiff had failed to sustain the burden of proving by a fair preponderance of the evidence that his territory was larger than the area from Maine to Maryland. After analyzing the accountant's report and the commission statements admittedly received by plaintiff showing the commissions due for the period from May to December 31, 1949, the trial justice concluded that plaintiff, a man of ability, having received a check on December 13, 1949 and another on January 13, 1950 in payment for the period from May to December 31, 1949 was approving these accounts with his eyes open, and that he must have known that he was not being paid for the territory which he now claims he was to be paid for.

The trial justice gave weight to the fact that no complaint had been made by plaintiff, according to his testimony, until April 1950, three months after the January 13, 1950 check had been received. On this issue, due to the conflict of evidence, the burden that was on plaintiff, and in the absence of any real complaint by plaintiff who had in his possession detailed statements showing a territory different from that which he claims he was covering, the trial justice could not find that plaintiff's territory was larger than that from Maine to Maryland. We cannot say, on the record before us, that he was clearly wrong.

The trial justice next considered plaintiff's claim that he was entitled to commissions for the sales of the expansion

bracelets. He found that the testimony was in direct conflict. However, he based his decision on this issue on the fact that, according to plaintiff's exhibit 1, $13,951 worth of such bracelets were sold in February, March and April 1950, and that a record of such sales appeared on the commission statements together with a record of the sales of other merchandise. Yet he found that on those statements, for which plaintiff received a check for $922.47 on May 23, 1950 which he cashed, all of those bracelets appeared as not carrying any commission.

Although plaintiff testified that he raised a question in March or April concerning the commissions due him for such bracelets, yet on May 23 he accepted and cashed the check for $922.47 which was related to the commission statements showing no commissions due for the sales of expansion bracelets. On the basis of this evidence and the lack of a clear complaint by plaintiff at a time when, according to the trial justice, there would have been a complaint if one had been present, he found that plaintiff had not established by a fair preponderance of the evidence that he was entitled to a commission on the expansion bracelets. We cannot say that he was clearly wrong.

On the issue of whether the plaintiff was discharged without cause the trial justice correctly ruled that the burden was on plaintiff to prove by a fair preponderance of the evidence that he was not discharged for cause. We cannot say on the evidence before us that he was clearly wrong in finding that the plaintiff had not sustained his burden of proof. Assuming without deciding that during the balance of 1950 plaintiff might have been entitled to future profits in the form of commissions on repeat sales which arose within the admitted territory that he was covering on the items on which he was admittedly entitled to commissions, we find no evidence in the instant record which could have supported an award of damages based on such future profits for the loss of commissions due from repeat sales after May

1, 1950. See *Barker* v. *Barker Artesian Well Co.*, 45 R. I. 297, 302, 303; *Armfield* v. *Frank N. McClure, Inc.*, 77 R. I. 390, 395. The plaintiff had the burden of proving his damages and we cannot say that the trial justice was clearly wrong in finding that he has not sustained such burden.

After a careful examination of the instant record we cannot say that the decision of the trial justice was clearly wrong or that he misconceived the evidence or the law applicable thereto. He had an opportunity to see the witnesses and observe their demeanor as they testified, and therefore had the advantage, which we do not have, of determining where the truth lay. *Pimpare* v. *McNamara*, 58 R. I. 515, 520.

All of the plaintiff's exceptions are overruled, and the case is remitted to the superior court for the entry of judgment on the decision.

*Luigi Capasso*, for plaintiff.

*Paul & Motta, Santi J. Paul*, for defendant.